Harley Alexander v. Commissioner. Maude Alexander v. Commissioner.
Alexander v. Commissioner
Docket Nos. 44169, 44170.
United States Tax Court
T.C. Memo 1956-2; 1956 Tax Ct. Memo LEXIS 294; 15 T.C.M. (CCH) 9; T.C.M. (RIA) 56002; January 10, 1956
*294 Arthur Glover, Esq., for the petitioners. Jackson L. Bailey, Esq., and R. S. Leigh, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in income tax for the year 1945: Harley Alexander
$2,641.60
Maude Alexander
$2,575.57
These deficiencies result from the Commissioner's determination that petitioners are taxable on 45 per cent of the profits of a partnership, Alexander & Alexander, for the year 1945 as community income. Petitioners petitioned this Court and we upheld the Commissioner's position, , on the basis that the doctrine of collateral estopped applied and that a prior decision of this Court for the years 1942, 1943, and 1944 against the same petitioners on income from the same partnership, which decision was affirmed by the Court of Appeals for the Fifth Circuit in , concluded further consideration of the issue. Petitioners applied to the United States Court of Appeals for the Fifth Circuit for review of our decision. The Court of Appeals set *295 aside the decision on the point at issue and remanded the proceeding "for a determination of the issues upon the facts" because "The record before the Tax Court, its opinion and the affirming opinion of this Court in the first proceeding, do not show determinations of fact and of legal issues such as preclude a consideration of the issues of fact and law in the second case." (Alexander v. Commissioner, C.A. 5, August 2, 1955.) Because of the remand we have reexamined the record before us and make the following Findings of Fact Petitioners are husband and wife. Harley Alexander will hereafter be referred to as petitioner. They filed their income tax returns for 1945 with the collector of internal revenue for the second district of Texas. Petitioner is a farmer and stockman. In the early 1920's he and his brother Robert were partners in the cattle business. They lived close together and their business was conducted with informality and on a basis of mutual trust and understanding. Petitioners have three children of whom the oldest is a daughter, Mary, born in 1920. She graduated in 1941 from Southern Methodist University. During her childhood she lived with her parents and acquired *296 the usual familiarity that a ranch child would with the cattle and ranching business. Sometime in 1940 petitioner and his brother formed a second partnership. They inspected land near Kerrick, Texas, and agreed if they could induce Albert Moen to form the land they would take him into the partnership on a salary basis and with an interest therein. The projected agreement was reached and a partnership was formed in which Moen held a 10 per cent interest and the two brothers 45 per cent each. No written agreement was made. At the end of the years 1940 and 1941 work sheets showing the results of the business were prepared headed "Robert Alexander and Harley Alexander" and a tax return so headed was filed for 1940. When this partnership was formed, petitioner told his brother that if it was successful he intended to give his interest to his daughter Mary. This was agreeable to Robert. About this time petitioner purchased a tract adjoining the land operated by the partnership. This tract was rented to the partnership and rents were paid to petitioner at first and afterward to Mary. Petitioner and his wife deeded the tract to Mary under date of July 3, 1942, recorded January 15, 1943. *297 Sometime in 1941 petitioner told Mary he intended to make her a gift of his share in the partnership, and at Christmas time when Mary made known her engagement to Walter Hart, petitioner decided he would make the transfer as a wedding present. To implement the intended transfer, Robert, Mary, and petitioner went to the First State Bank of Spearman, Spearman, Texas. There Robert and Mary executed a note for $7,210 and $7,000 of this amount was deposited in the name of Alexander & Alexander at the bank. On the same day, the following checks were drawn against this account: Payee
Amount
Signer of Check
(1) Robert Alexander
$ 355.56
Alexander & Alexander, Harley Alexander
(2) Robert Alexander
3,155.71
Alexander & Alexander, Harley Alexander
(3) Harley Alexander
1,164.87
Alexander & Alexander, by Robert Alexander
(4) First State Bank,
1,982.94
Alexander & Alexander, Harley Alexander
Spearman, Texas The following notations appeared on the checks: (1) "Less 225 pd Robert Alexander to be refunded." (The back of the check has many items which appear to be amounts paid out for labor, the sub-total amount of which is $130.56, and another notation below the *298 sub-total, "Combine $225.00," making the total $355.56); (2) "1/2 of 133 cattle Okla. City"; (3) "Bal. on 1/2 of cattle bought at Oklahoma City"; (4) "Mary's note." The banker who handled the above transaction understood that the "Alexander & Alexander" in whose name the account was opened was composed of Robert and Mary. Robert told Moen and Robert's nephew, David McBryde, that Mary was a partner in the business. The parties intended that from that time forward Mary was to be a partner in Alexander & Alexander. The books kept for Alexander & Alexander did not show Mary as a partner until 1944, except that for 1943 they show division of company money, with $3,600 to Mary. For 1942 and 1944 the books show "Alexander & Alexander Partnership report" as a heading on one page, and, for 1944, "Robert Alexander 45% Mary Hart 45% Albert Moen 10%" as a heading on another page, and show company money divided, $6,000 to Mary. The books covering 1940 to 1944, inclusive, consist of seven sheets. No capital accounts for partners are shown, except indication of distributions as above. No capital contributions by partners are shown. The sheets were made up the latter part of each year. On *299 March 7, 1942, Mary was married to Walter M. Hart. From March until June of 1942, Mary was with her husband at College Station, Texas. Thereafter, and until May 1943, except for occasional visits at home, she was with her husband at Army camps located in the United States. In May 1943 her husband went overseas and was later killed while in the service. During the school years of 1943 and 1944, and 1944 and 1945, Mary was in Amarillo, Texas, with her sister Frances. Mary returned to her parents' home in Hansford County on many weekends. She also spent her summer vacations with her parents. During the years 1942, 1943, and 1944, petitioner and Robert Alexander drew checks on various bank accounts in payment of their personal expenses as well as the expenses of the partnership. Some examples of checks drawn by Harley Alexander on the Alexander & Alexander bank account are as follows: Date
Payee
Amount
(1) 6- 2-42
H. L. Wilbanks
$ 8.34
(2) 11- 1-42
E. L. Leighton
5.00
(3) 11- 1-42
L. R. Searlott
10.05
(4) 11- 3-42
W. T. Martin
15.63
(5) 1-20-43
Texas County Motor Co.
8.24
(6) 6- 9-43
W. T. Martin
93.30
(7) 10-25-43
L. K. Garrett
3,131.17
(8) 1-29-44
R. L. McClellan Grain
Co.
465.10
(9) 3-18-44
Lewis Phillipps
25.00
(10) 10- 7-44
T. L. Moulton
105.00
*300 These checks were written for the following reasons: (1) For license on truck owned by petitioner. (H. L. Wilbanks was tax collector of Hansford County.) (2) For pasture. (3) For inspection of 201 cattle. (4) For repairs for Alexander & Alexander. (5) For truck axle for Alexander & Alexander. (6) For repairs incurred by Moen, billed to petitioner. (7) For 73 cattle purchased by Alexander & Alexander received by the petitioner at Gruver. (8) For a car load of hay used by Alexander & Alexander, petitioner, McBryde, and Robert Alexander. (9) For labor for unloading feed. (10) For one cow. Albert Moen wrote most of the Alexander & Alexander checks, in general paid the bills, and was supposed to pay all expense accounts, except cattle purchased, "and probably feed that we bought and ordered." In 1942 the petitioner supervised the cutting of the wheat for Alexander & Alexander, and in connection therewith wrote the following checks on the partnership bank account: Date
Amount
For
7-18-42
$400.00
Cutting wheat
7-18-42
47.50
Cutting wheat
7-23-42
22.83
Repairs
7-28-42
28.00
Labor
7-28-42
28.00
Labor
The only cattle sold in 1942 *301 were 127 steers (purchased at Oklahoma City the year before) for $17,944.88. The cattle were shipped to Kansas City. Robert Alexander was present when the first shipment was made and they were billed out in his name. Robert Alexander received payment for this shipment in the amount of $7,250.16. The remainder were shipped later and Moen billed them out in petitioner's name. Petitioner received payment for this shipment in the amount of $9,694.72. The two checks were deposited to the partnership bank account. In 1943 Alexander & Alexander sold for $25,050.39 cattle costing $13,059.69. A bank account was opened for Mary at the First State Bank at Spearman on December 31, 1942, with a deposit of $981.64. During the period between December 31, 1942 and September 22, 1943, both inclusive, there was deposited to her account a total of $7,170.69. The checks written on the account are, as follows: Date
Payee
Check written by
Amount
For
1- 6-43
H. D. Foust, Tax. Col.
Robert Alexander
$ 47.07
Taxes on
Sec. 9,
Dallam Co.
3-31-43
Dalhart National Farm &
Harley Alexander
362.81
Loan Ass'n
4-27-43
Col. of Int. Rev.
C. A. Gibner
171.83
Fed. Inc.
Taxes
6-12-43
Dalhart National Farm &
Harley Alexander
2,000.00
Payment on
Loan Ass'n
principal
Loan #4323
8-11-43
Dalhart National Farm &
Mary
2,686.05
Loan #4323
Loan Ass'n
paid in full
9-22-43
First State Bank
Harley Alexander
750.00
Bond
*302 Mary performed during 1942, 1943, and 1944 no services for Alexander & Alexander. During the year 1944 Alexander & Alexander sold two groups of cattle and participated in a trade of another. The partnership sold 55 steers in October for $6,033.35 and 54 steers in December for $5,967.50. During November the partnership entered into a cattle trade with H. B. Hart in which the partnership realized a gain of $175. The petitioner purchased 23 head of cattle from the Guymon Sales Company and gave Alexander & Alexander's check signed by him in payment therefor in the amount of $1,439.43 under date of October 5, 1944. The partnership had 20 steers on hand at the end of 1944. In the fall of 1944, Alexander & Alexander borrowed a total of $5,000 from Mary's bank account. This money was repaid by December 1944. Alexander & Alexander reported net income of $15,928.94 on their partnership return for 1942 but made no distribution of profits that year. Mary reported Federal income of $7,168.02 from Alexander & Alexander for 1942. In 1943 the Alexander & Alexander partnership return showed net profits of $7,412.59. Distributions, all by checks drawn on the bank account of Alexander & Alexander, *303 were made as follows: Date
Payee
Check signed by
Amount
(1) 7-28-43
Robert Alexander
Robert Alexander
$1,800.00
(2) 8- 5-43
Mary
Harley Alexander
1,800.00
(3) 9-22-43
Mary
Harley Alexander
1,800.00
(4) 2- 9-44
Robert Alexander
Robert Alexander
1,800.00
(5) 4- 1-44
Albert Moen
Robert Alexander
400.00 Explanation of (2) and (3) above: These checks were not endorsed, but deposited in Mary's bank account at the First State Bank at Spearman. Mary reported $3,335.67 from Alexander & Alexander in her return for 1943. In 1944 the Alexander & Alexander partnership return showed net profits of $17,712.96. Distributions, all by checks drawn on the bank account of Alexander & Alexander, were made as follows: Date
Payee
Check signed by
Amount
(1) 3-22-44
Mary
Harley Alexander
$2,000.00
(2) 4-11-44
Mary
Harley Alexander
3,000.00
(3) 4-22-44
Albert Moen
Robert Alexander
1,333.33
(4) 4-24-44
Robert Alexander
Robert Alexander
6,000.00 Explanation of (1) and (2) above: These checks were not endorsed but deposited in Mary's bank account. For 1945 there was filed for the daughter Mary a return showing income of $9,138.17. *304 Included in such income was $7,409.66 from Alexander & Alexander. The 1945 partnership return for Alexander & Alexander, signed by Robert Alexander, listed as partners and distributive shares the following: Robert Alexander, Gruver, Texas,
45%
$ 7,409.66
Mary Alexander Hart, Gruver, Texas,
45%
7,409.66
Albert Moen, Guymon, Oklahoma,
10%
1,646.60
Total
$16,465.92
In the statutory notices of deficiency mailed to petitioners, the Commissioner made the following adjustments to petitioners' community net income, for the taxable year ended December 31, 1945: Adjustments to Net Income
Net community income as disclosed by amended returns
$16,099.39
Unallowable deductions and additional income: (a) Partnership income
$ 7,409.66
(b) Gain in sale of cattle
675.00
(c) Gain on sale of grain
2,850.03
(d) Miscellaneous income
372.43
(e) Taxes disallowed
333.15
(f) Repairs claimed disallowed
938.00
(g) Labor disallowed
477.00
(h) Feed disallowed
80.00
(i) General ranch expenses disallowed
162.16
(j) Gas and oil disallowed
10.00
(k) Capital gain
396.00
Total
$13,703.43
Non-taxable income and additional deductions: (l) Oil and gas income
140.85
(m) Machine hire
407.49
(n) Depreciation
202.49
Total
$ 750.83
Net Addition
$12,952.60
Net Community Income Adjusted
$29,051.99
*305 As a result of the additional income determined by the Commissioner, he determined a deficiency of $2,641.60 against Harley Alexander and $2,575.57 against Maude Alexander. During 1945 Harley drew a number of checks on the bank account of Alexander & Alexander, most of which were in connection with partnership business. These checks included two, however, in the amounts of $5,000 and $3,000 which represented loans to Harley. These loans were repaid to the partnership. Harley was authorized by Robert and Mary to draw checks on the partnership account. During 1945 Mary made several trips to the scene of the partnership operations. Most of the business decisions were made by Robert. Mary participated in keeping some of the partnership books and engaged in moving some of the partnership cattle. Harley also participated to some extent in managing the partnership business in 1945. This was done on behalf of Mary and Harley received no compensation therefor. Ultimate Conclusions Harley was not a partner in Alexander & Alexander in 1945 and the Commissioner improperly adjusted the community income of petitioners for that year by adding thereto 45% of the income of Alexander & Alexander. *306 Opinion TIETJENS, Judge: We have reexamined all of the evidence of record in the light of the opinion and mandate of the Court of Appeals for the Fifth Circuit, Alexander v. Commissioner, (August 2, 1955). As pointed out by the Court of Appeals, this includes evidence of the intentions of the parties in forming the partnership of Alexander & Alexander which was not before this Court when the proceeding involving prior years was decided, but which, as we understand the mandate, must be taken into consideration here, not-withstanding such evidence was available and could have been introduced in the prior proceeding. The sincerity and honesty of the witnesses who testified before us on this point are not to be doubted. We accept their testimony and on the basis of this and other evidence bearing on the situation in the year 1945 not in the previous record we conclude that in that year Harley had no interest in the partnership Alexander & Alexander and, accordingly, that petitioners should not be taxed on the partnership income. Our decision on another point involving the question of whether or not gains from the sale of certain cattle were to be treated as ordinary income or *307 capital gain was affirmed by the Court of Appeals and requires no further treatment here. Decision will be entered under Rule 50.